[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON STATE'S MOTION TO TRANSFER TO REGULAR CRIMINAL DOCKET
In this proceeding, the court must decide whether the case of Alex Malave should be transferred to the regular criminal docket pursuant to General Statutes Section 46b-127. That statute reads in pertinent part as follows: "The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) any child referred for the commission of a murder under Sections 53a-54a to 53a-54d, inclusive provided any such murder was committed after such child attained the age of fourteen years;. . . . No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged."
Alex was arrested on a warrant issued by the presiding judge CT Page 1727 of the regular criminal docket but thereafter the matter was transferred to the juvenile docket and a petition was filed. Count 4 of the petition charges "Criminal Liability for Murder (53a-8/53a-54(a)): On or about June 26, 1990, [Alex Malave] solicited, requested, commanded, importuned or intentionally aided another in New Haven who intentionally caused the death of a third person in New Haven."
A hearing was conducted on August 27, 28 and 29, 1990 at which hearing witnesses[1] testified and documentary evidence[2]
was presented. At the hearing, the State was represented by the advocate, Attorney Cathleen Edwards, and Alex was represented by Attorney Kenneth Rosenthal from the New Haven Legal Assistance Association.
 I.
From the testimonial and documentary evidence, the court finds that the following facts were established.
 A.
The victim, one Kevin Collazo, died from a gun shot wound of the chest on June 26, 1990. Alex was born in Brooklyn, New York, on April 16, 1975. Alex, therefore, was fifteen years old on the date when the crime charged against him was committed.
 B.
On June 26, 1990, a group, including Alex, drove from 38 Hillside Avenue, Meriden, to 262 Lloyd Street in the Fair Haven section of New Haven. They came in two cars, a Toyota Corolla and an Oldsmobile Cutlass Supreme. Alex was a passenger in the latter automobile as was Celestino Mercardo whose nickname is Pacholo. Their purpose in coming to New Haven was to fight with a Stephen Fontanez, also known as "Fat Steve" and his gang. Trouble had previously existed between the Meriden group and Fat Steve's group.
In Meriden, on June 26, 1990, Alex had a shotgun in his possession. The shotgun was brought to New Haven in the Oldsmobile and taken inside of the house at 262 Lloyd Street. The house was where Thomas Vasquez, a friend of the Meriden group, his mother and his girlfriend were living. After arriving in New Haven, Pacholo procurred a gun that was described as a 30-30
rifle.
In the house at 262 Lloyd Street, the group from Meriden talked about "getting" meaning killing Fat Steve. The discussion, at which both Alex and Pacholo were present, took place in the CT Page 1728 bedroom of Thomas Vasquez. Before the discussion, Alex went to the basement of the house where he loaded the shotgun. Thomas Vasquez' mother observed Pacholo loading his gun and asked the group from Meriden to leave her house. After leaving 262 Lloyd Street, the group from Meriden drove around the neighborhood and then returned and parked their cars nearby.
Members of the Meriden group, including Alex and Pacholo, approached the intersection of Lloyd and Exchange Streets where they encountered members of Fat Steve's gang shooting off firecrackers on the street. Alex and Pacholo were the only persons from Meriden who had weapons. Standing about two feet from each other, Alex and Pacholo pointed their guns at the other group and fired their weapons. Alex apparently fired one shot His weapon, the shotgun was a four-round automatic which, when recovered by the police, contained two live rounds and one jammed shell. The jammed shell would have prevented further firing. Pacholo fired four or five times.
One of the fired bullets entered the left arm of Kevin Collazo and reentered his left chest and exited his body in the area of the right nipple. The death of Kevin Collazo was caused by a large caliber bullet consistent with a shot from a 30-30 rifle and inconsistent with a bullet from a shotgun.
 II.
Under General Statutes Section 53a-54 (a), a person commits murder "when, with intent to cause the death of another person, he causes the death of such person or of a third person." The charge placed against Alex of criminal liability for murder means that the State envisions prosecuting him on the regular criminal docket as an accessory to the crime. Accessorial liability exists when "a person, acting with the mental state required for the commission of an offense. . .solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense. General Statutes Section53a-8. To secure a transfer to the regular criminal docket, the State had to establish probable cause for Alex's intent to aid Pacholo and that, in so aiding, Alex intended to commit the crime of murder. Proof of the dual intent is necessary. State v. Foster, 202 Conn. 520, 525 (1987); State v. Fleming, 198 Conn. 255,271, cert. denied, 475 U.S. 1143, 106 S.Ct. 1797,90 L.Ed 2d 342 (1986).
At this juncture, the court is dealing only with probable cause which exists if the facts found are sufficient in themselves to warrant a person of reasonable caution in believing that Alex had the dual intent when he fired his gun. See State v. Corbuzzi,161 Conn. 371, 376 (1971), cert. denied, 404 U.S. 1017, 92 S.Ct. CT Page 1729 677, 30 L.Ed.2d 664 (1972); State v. Kaplan, 20 Conn. App. 183,186 (1989). Intent can, of course, be established circumstantially. State v. DeForge, 194 Conn. 392, 399 (1984). More often than not, a party's intention is inferred from his conduct. State v. Smith, 198 Conn. 147, 154 (1985). From the findings of fact, the court concludes that prior to and when Alex fired his gun, he had the intent to murder.
Whether Alex intentionally aided Pacholo presents a more problematic question. Defense counsel argued that Alex's firing a shot cannot be viewed as aiding but must be considered as an independent act establishing, at most, probable cause for attempted murder or a conspiracy to commit murder.[3] The court cannot agree with counsel's interpretation especially at this juncture where the issue of intentionally aiding concerns probabilities rather than sufficiency of evidence to convict. State v. Corbuzzi, supra.
Moreover, implicit from the court's findings is that an agreement existed among members of the Meriden group to fight with Fat Steve's gang and to kill Fat Steve. In Pinkerton v. United States, 328 U.S. 640, 647, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the Supreme Court stated that all conspirators would be liable for reasonably foreseeable substantive crimes committed by any of them in furtherance of the conspiracy. Criticisms of the Pinkerton rule are that aiding should mean something more than the connection with a conspiracy and what crimes are reasonably foreseeable. 2 W. LaFave A. Scott, Substantive Criminal Law (1986), Section 6.8(a) p. 155. In this matter, however, the criticisms are inapplicable as Alex participated in the same overt act as Pacholo albeit with less frequency and, as appears, with less success.
The traditional definitions of accessorial liability require that the accessory in some way associate himself with the venture, that he participate in it as in something he wishes to bring about and he seek by his action to make the venture succeed. W. LaFave A. Scott op. cit. Section 6.7(d) p. 146 citing United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938). Alex's conduct fits into this criteria. The court, therefore, finds probable cause that Alex intentionally aided Pacholo and that in so aiding, he intended to commit the crime of murder. Kevin Collazo may have been an unintended victim but that fact would not exculpate Alex. General Statutes Section 53a-54a(a) refers specifically to the killing of a third person and, in so doing, the statute incorporates the well established doctrine of transferred intent. See 1 W. LaFave A. Scott, op. cit. Sections 3.11(d), 3.12(d), pp. 385, 399.
III. CT Page 1730
General Statutes Section 53a-8 provides that the accessory "may be presented as if he were the principal offender." For the purpose of determining criminal liability, there is no practical difference between an accessory and a principal. In re Ralph M.,211 Conn. 189, 299 (1989). Accordingly, the matter of Alex Malave is transferred to the regular criminal docket as required by General Statutes Section 46b-127.
BARNETT, J.