STATE OF CONNECTICUT *v.* SHAWN ROBINSON
(10960)

FOTI, LAVERY and FREEDMAN, Js.

Argued June 1—decision released August 10, 1993

*Susan M. Hankins,* assistant public defender, for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Mary Elizabeth Baran,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of a weapon or dangerous instrument in a correctional institution in violation of General Statutes § 53a-174a (a).[1] He was sentenced to a term of twenty years imprisonment, to be served consecutive to a sixty-two year sentence previously imposed for prior convictions for which the defendant was already incarcerated. On appeal, the defendant claims that the trial court improperly (1) refused to dismiss the information against him for lack of jurisdiction, (2) failed to enforce an order of sequestration, (3) denied his motion for examination pursuant to General Statutes § 17a-566, (4) granted the state's motion in limine, (5) denied him an opportunity

---

[1] The defendant was also charged with two counts of assault in the second degree in violation of General Statutes § 53a-60 (a) (5). The court declared a mistrial on each of those counts, and the state thereafter nolled the charges.

to examine jurors who were exposed to allegedly inflammatory media coverage during his trial, and (6) instructed the jury on reasonable doubt. The defendant also claims that he was denied his fundamental right to a fair trial because of alleged prosecutorial misconduct during cross-examination of the defendant and during closing argument. We reverse the judgment of conviction and remand for a new trial.

The jury reasonably could have found the following facts. On January 11, 1990, the defendant, an inmate confined at the community correctional center in New Haven, was brought to the holding pen in the center's admitting and processing area for the purpose of being transported to court in Meriden. Because the defendant had created a disturbance at court the previous day, the sheriff's department employees assigned to that court had requested that the defendant be transported in leg irons and belly chains. At approximately 10:15 a.m., transportation sheriffs attempted to place the restraints on the defendant. The defendant refused to cooperate. Correction officer Jeffrey Higgins then entered the holding pen and explained to the defendant that he had to comply with this requirement. The defendant still refused, so Higgins called fellow officer Donald Gladue for assistance. Pursuant to department policy, Lieutenants John Casale, James Foley and James Huckaby also responded to Higgins' call, and the three lieutenants attempted to persuade the defendant to comply with the restraint order.

The defendant became increasingly agitated. At one point, he was given a direct order to place his hands on the wall so that he could be handcuffed. He refused and placed his hands in his pockets. He then refused, when asked, to remove his hands from his pockets. Casale, the shift supervisor, then called for a plexiglass shield to protect the officers from injury. As the guards backed out of the holding pen, the defendant pulled his

right hand out of his pocket, lunged at Huckaby and attempted to stab him with a shank constructed from the metal arch support of an inmate-issue shoe. As he did this, the defendant yelled, "Fuck you. I will kill you." Huckaby moved; Gladue was slashed in the arm by the shank and began to bleed heavily. Foley then sprayed mace at the defendant, whom the officers wrestled to the ground. In thrashing about with the shank in his hand, the defendant jabbed Higgins in the stomach repeatedly and slashed Gladue's back, side, leg and buttocks. The defendant was eventually restrained, and Foley pried the shank from his hand. Captain Dennis Barile arrived and directed that the defendant be placed in isolation, in four-point restraints.

Gladue was treated at a hospital, receiving eleven stitches on his arm, and he has a permanent scar. Higgins was treated at the jail infirmary for numerous stomach lacerations.

I

We first address the defendant's claim that the court lacked jurisdiction.

An arrest warrant was signed by a judge of the Superior Court on March 5, 1990, charging the defendant with the crimes for which he was subsequently prosecuted. The return of the warrant indicates that the defendant was arrested on June 20, 1990, and that at that time the arresting officer had read the warrant and information to the defendant. The defendant was arraigned on the same day.

Prior to trial, the defendant moved for dismissal of the charges against him. Specifically, he claimed that the state had failed to comply with Practice Book §§ 594[2]

---

[2] Practice Book § 594 provides: "The warrant shall be signed by the judicial authority and shall contain the name of the accused person, or if his name is unknown, any name or description by which he can be identified

and 596[3] by not serving him personally with an arrest warrant and by omitting from the arrest warrant a statement regarding speedy service of the warrant.

After an evidentiary hearing, the court denied the defendant's motion to dismiss. In its memorandum of decision, the court noted that the warrant contained no defects that would require dismissal. Citing *State v. Fleming,* 198 Conn. 255, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986), the court concluded that, even if it assumed that the arrest had been illegal, no jurisdictional barrier[4] prevented the defendant's subsequent prosecution because the arrest did not impair the fairness of the prosecution.

The defendant now renews this jurisdictional claim. He argues that *State* v. *Fleming,* supra, does not control because he is not challenging the legality of his arrest but rather the state's "fundamental failure to execute the legal documents required . . . to initiate prosecution." This failure, he claims, precludes the initiation of criminal proceedings and makes the proceedings to which he was subjected void ab initio and coram non judice. Citing *Allen* v. *Gray,* 11 Conn. 95, 102 (1835), the defendant asserts that a criminal court's jurisdiction consists of three elements, jurisdiction of

with reasonable certainty, and the conditions of release fixed, if any. It shall state the offense charged and direct any officer authorized to execute it to arrest the accused person and to bring him before a judicial authority without undue delay."

[3] Practice Book § 596 provides: "The officer executing an arrest warrant may do so anywhere within the state upon apprehension of the accused. The officer shall take him into custody, serve a copy of the warrant upon him and follow the procedure specified in Sec. 654 or Sec. 656, whichever is applicable."

[4] "The 'jurisdictional barrier' referred to in [*State* v. *Fleming,* 198 Conn. 255, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986)] . . . pertain[s] to personal jurisdiction over a defendant, not subject matter jurisdiction . . . ." *State* v. *Carey,* 222 Conn. 299, 311 n.6, 610 A.2d 1147 (1992).

the subject matter, of the person and of the process. He contends that he was not brought before the court solely by "legal process" and, therefore, the third element was lacking. The defendant states that his jurisdictional claim is "closely akin to a claim of a party in a civil proceeding where there is a failure of service, which is remedied by voiding the proceedings ab initio."

"The Superior Court's authority in a criminal case becomes established by the 'proper presentment of the information . . . which is essential to initiate a criminal proceeding.' *Reed* v. *Reincke,* 155 Conn. 591, 598, 239 A.2d 909 (1967)." *State* v. *Carey,* 222 Conn. 299, 306, 610 A.2d 1147 (1992). "If the court has jurisdiction of the subject matter, as it had in the present case, the rule is generally recognized that, if an accused person is physically before the court on a proper accusatory pleading, any invalidity in his original arrest is immaterial." *Reed* v. *Reincke,* supra, 599. There is no question that this defendant was physically before the court on a proper accusatory pleading,[5] which conferred subject matter jurisdiction upon the court.

The thrust of the defendant's argument is that Practice Book §§ 594 and 596 create a mandatory procedure that the state must follow in order to initiate a criminal proceeding. He relies on *State* v. *Cook,* 183 Conn. 520, 441 A.2d 41 (1981). We are unpersuaded.

"In *Cook,* the defendant was arrested pursuant to a warrant for violating his probation. Section 943 at that time required arrest warrants to commence probation revocation proceedings, and Practice Book § 594 required that such warrants be signed by 'the judicial authority.' The defendant filed a motion to dismiss the revocation proceedings because the arrest warrant had

---

[5] At the hearing on his motion to dismiss, the defendant also claimed that the judge had failed to sign the arrest warrant, an unsigned photocopy having been presented to him previously. This claim was not renewed on appeal.

not been signed by a judge." *State* v. *Carey,* supra, 310. While § 594 may create a mandatory procedure that must be followed to initiate a proceeding for revocation of probation pursuant to Practice Book § 943;[6] *State* v. *Cook,* supra, 523; "[a] probation revocation proceeding is not a stage of the criminal prosecution." *State* v. *Carey,* supra, 309, citing *Gagnon* v. *Scarpelli,* 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). We are thus unconvinced that *State* v. *Cook,* supra, applies to the issue at hand.[7]

Moreover, we cannot agree with the defendant's claim that the time limitation "without undue delay" as stated in § 594 pertains to the actual arrest of the accused person. That phrase clearly refers to the speedy *presentment* of the accused to the judicial authority *following* the arrest. See A. Spinella, Connecticut Criminal Procedure (1985), c. II, § 3A (b). Practice Book § 596 would appear to apply to a person already in custody only insofar as it requires the service of a copy of the warrant

[6] Practice Book § 943 provides in pertinent part: "In cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant. All other proceedings for revocation of probation shall be initiated by an arrest warrant . . . ."

[7] The other cases cited by the defendant are also inapplicable. *Grumon* v. *Raymond,* 1 Conn. 40, 43 (1814), involved a warrant directed to "search suspected persons, and arrest them." The court found that this was a general warrant and held that the magistrate had no jurisdiction over such a process. *Tracy* v. *Williams,* 4 Conn. 107, 113 (1821), involved an action of trespass for false imprisonment in which the plaintiff's arrest was valid but his subsequent imprisonment was "wholly extrajudicial and irregular"; the justice of the peace who had imprisoned him had no jurisdiction over this illegal process. Id. *Allen* v. *Gray,* 11 Conn. 95 (1836), also involved an action in trespass and false imprisonment, in this case against a grand juror who had no jurisdiction to issue the complaint by which the accused was later arrested. *Church* v. *Pearne,* 75 Conn. 350, 355 (1903), which speaks of a jurisdictional defect caused by the lack of "legal process," concerned a warrant that lacked probable cause. None of these early cases is like the present case.

upon him followed by the specified applicable proce-
dure. The trial court specifically found no defects in
the warrant; despite the defendant's contrary asser-
tions, the return of the warrant indicated it had been
properly served. We conclude that neither § 594 nor
§ 596 contains a mandatory requirement that, as
applied to the facts of this case, affected the court's
jurisdiction over this defendant.

## II

The defendant next claims that the trial court failed
to enforce a sequestration order, thereby depriving him
of a fair trial. We agree.

The facts relevant to this claim are as follows. On
September 12, 1991, before the commencement of trial,
the parties obtained an order of sequestration for all
witnesses. The defendant also filed a motion in limine
to prevent any correction officer called as a witness
from testifying in uniform rather than in civilian cloth-
ing. The court granted that motion.

On September 20, 1991, at the close of the state's
case, the defendant subpoenaed Mark Murray, a cor-
rection officer employed at Somers prison who had been
guarding the defendant in court throughout the state's
case. The state, invoking the sequestration order,
moved to preclude Murray as a witness. On the basis
of the defendant's representation that Murray's pro-
posed testimony was brief and unrelated to the state's
evidence, the court overruled the objection but directed
that the defendant call Murray prior to any other
defense witness. The defendant then requested that
Murray be excluded from the courtroom following his
testimony because "it would be prejudicial to [the
defendant] to have his own witnesses then assume the
role after they testify of one of the correction officers
who is guarding him." The court noted that the jury
already had viewed Murray in his capacity as a correc-

tion officer and declined to exclude Murray, reasoning that to do so would constitute undue interference with the security procedure implemented by Somers prison. The court suggested, however, that if the defendant chose not to call Murray immediately, he could call him when court resumed on the following Monday, September 23, 1991, thereby allowing Murray to be reassigned, if possible, to another case. The defendant then elected to call Murray on September 23 rather than on September 20, because Murray was in uniform on September 20. Although the defendant complained that Murray's continued presence in court on September 20 violated the sequestration order by enabling Murray to listen to the testimony of the defense witnesses, the court refused to exclude Murray.

On the same day, the defendant called Captain William King, who was employed at Somers prison and testified that the defendant had a minor laceration on his lip upon arriving at Somers on January 11, 1990. King also testified that he had documented the defendant's appearance by taking four photographs, which were subsequently lost.

When the trial resumed on September 23, 1991, the defendant called Murray, who testified that the defendant had arrived at Somers prison on January 11, 1990, with a swollen lip and face, watery eyes, and a bloody shirt. On the next day of trial, the defendant noted that Murray and King were both in court guarding him, in violation of the sequestration order. Over the defendant's objection, the court refused to exclude the officers.

Thereafter, the defendant called his father, Diago Robinson, Sr., also an inmate at Somers, as a witness. Robinson testified that he was in King's office when King photographed the defendant. The defendant had previously admitted an alleged photocopy of these photographs, over the state's objection. The defendant's

father testified that this photocopy had been given to him by the defendant for safekeeping on the day the photographs were taken.

On rebuttal, over the defendant's objection, the state called King, who testified that the defendant's father was not present when King had photographed the defendant, that the defendant was placed in isolation upon his arrival at Somers and therefore had no contact with any other inmate, including his father, following his arrival, and that inmates at Somers have access to cameras and photocopy machines.

"In any criminal prosecution, the court, upon motion of the state or the defendant, shall cause any witness to be sequestered during . . . any part of the trial of such prosecution in which he is not testifying." General Statutes § 54-85a; see also Practice Book § 876. The granting of an order on a request for sequestration is not discretionary. *State* v. *Paolella*, 211 Conn. 672, 681, 561 A.2d 111 (1989). "The purpose of a sequestration order is to prevent a witness from fashioning his testimony to correspond to the statements of others in the courtroom . . . thereby ensuring that a defendant receives a fair trial. If the trial court fails to observe its own sequestration order, the burden is on the party requesting sequestration to show prejudice." (Citations omitted; internal quotation marks omitted.) Id., 680–81.

The defendant argues that the court's sequestration order was violated on three occasions and that he was prejudiced each time: (1) by Murray's presence in court during King's defense testimony; (2) by the presence of both Murray and King after their testimony during the remainder of the defense case; and (3) by King's giving of rebuttal testimony.

Our review of the record discloses that the defendant has failed to show prejudice in either of the first two occurrences. We note that the defendant himself

may have violated the court's sequestration order by failing to identify Murray as a potential witness until the commencement of his case.

We agree, however, with the defendant as to the third occurrence. King, a subpoenaed witness, was permitted to remain in the courtroom, guarding the defendant, throughout the testimony of defense witnesses, including that of the defendant and his father. The defendant properly objected that the state's use of King as a rebuttal witness violated the sequestration order. King was able to listen to the testimony of both the defendant and his father and to rebut their testimony by specifically contradicting it. King admitted having taken pictures that depicted the defendant's condition, which were subsequently lost. He also testified, however, that inmates have access to cameras, thereby supporting the state's charge that the defendant or his father had fabricated evidence. King further disputed the testimony of the defendant's father that he had been present when the defendant was photographed and that he had had an opportunity to see the defendant on the day that the defendant came to Somers. King was also present during Murray's testimony and disputed Murray's assessment of the defendant's physical condition.

The defendant's claim does not involve the violation of a constitutional right; therefore, the burden rests on him to show the harmfulness of the court's permitting King to testify on rebuttal. See *State* v. *Ruth,* 181 Conn. 187, 196-97, 435 A.2d 3 (1980). The court's action was harmful if it was likely to have affected the jury's verdict. *State* v. *Brown,* 187 Conn. 602, 611, 447 A.2d 734 (1982). King's rebuttal testimony went to the heart of the defense. His testimony directly contradicted that of the defense witnesses. The inconsistency between his testimony and theirs was not simply "marginal in the extreme"; *State* v. *Stovall,* 199

Conn. 62, 69, 505 A.2d 708 (1986); the difference was striking and, therefore, "likely to affect the result." See *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976). We conclude that, as a consequence of King's rebuttal testimony, the defendant was prejudiced and deprived of a fair trial.[8]

## III

The defendant's third claim is that the trial court improperly denied his motion for examination pursuant to General Statutes § 17a-566.[9] We agree.

At the time of sentencing, the defendant personally requested an examination pursuant to the statute. The state objected to the request, citing the defendant's inappropriate behavior in the courtroom and the remoteness of the mental status report. In denying the defendant's motion, the court indicated that the defendant would have to serve his prior sentences, totaling over sixty years, before the sentence in the present case would be effectuated. The court viewed that as a factor to be considered in making what it otherwise recognized as a decision involving the exercise of discretion. After reviewing the presentence report, the court improperly concluded that it could not order an examination pursuant to § 17a-566 because the defendant was a sentenced prisoner. The court therefore did not exercise its discretion to grant or to deny the request for an examination.

---

[8] Because our disposition of this issue requires a new trial, we will consider only those remaining claims that are likely to affect the proceedings on remand.

[9] General Statutes § 17a-566 provides in pertinent part that "any court prior to sentencing a person convicted of an offense for which the penalty may be imprisonment in the Connecticut Correctional Institution at Somers . . . may if it appears to the court that such person is mentally ill and dangerous to himself or others . . . order the commissioner to conduct an examination of the convicted defendant by qualified personnel of the institute. . . ."

"Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *State* v. *Polanco,* 26 Conn. App. 33, 41, 597 A.2d 830, cert. denied, 220 Conn. 926, 598 A.2d 367 (1991), quoting *State* v. *Battle,* 170 Conn. 469, 476, 365 A.2d 1100 (1976). Since the court incorrectly concluded at the onset that it had no power to order an examination, it never reached the point of exercising its discretion. While every reasonable presumption will be made in favor of the trial court's proper exercise of its discretion; *State* v. *Graham,* 21 Conn. App. 688, 703, 575 A.2d 1057, cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990); we cannot do so where the court has failed to exercise that discretion. See *State* v. *O'Neill,* 200 Conn. 268, 274, 511 A.2d 321 (1986). Inherent in the concept of judicial discretion is the idea of choice and a determination between competing considerations. *State* v. *Bergin,* 214 Conn. 657, 683, 574 A.2d 164 (1990). A court's discretion must be informed by the policies that the relevant statute is intended to advance. *In re Sheldon G.,* 216 Conn. 563, 584, 583 A.2d 112 (1990).

Here, the trial court denied the defendant's motion not on the basis of an "exercise of discretion" but because the court improperly determined that the defendant's status precluded its ordering the requested examination. Under the circumstances, therefore, we must conclude that this denial was improper.

## IV

The defendant's fourth claim is that the trial court improperly granted the state's motion in limine, thus precluding testimony about prior incidents involving the defendant and a correction officer. We disagree.

The facts relevant to this claim are as follows. During the state's case-in-chief, Foley testified on cross-examination that on January 11, 1990, Officer Thomas Mullhall had been summoned to the admitting and processing room along with other correction officers who were responding to Higgins' call for assistance. Mullhall, therefore, was present when the defendant allegedly assaulted the guards inside the holding pen. Foley further testified that Mullhall and the defendant had been involved in a physical altercation on January 3, 1990, approximately one week prior to the present offense. Mullhall did not testify at trial.

Prior to the commencement of the defendant's case, the state learned that the defendant had subpoenaed certain witnesses and documents, all pertaining to the January 3 incident. The state filed a motion in limine to exclude this evidence at trial on relevancy grounds. During argument on the motion, the defendant represented that he did not plan to delve into the particulars of the January 3 incident, but merely sought to establish that a prior altercation had occurred and that on March 6, 1990, he had filed a complaint with the state police pertaining to the incident. The defendant argued that, since Mullhall had been present at the January 11 incident, evidence of this earlier altercation with Mullhall was relevant to demonstrate motive, interest and bias among the correction officers at the January 11 incident and to attack the credibility of those officers who had already testified for the state at this trial.

The court, in granting the motion, ruled that evidence of the January 3 incident was not probative of what had occurred on January 11, and that its admission would confuse the jury by opening the door to a host of collateral issues involving not only the January 3 incident but also numerous other prior physical altercations that had occurred between the defendant and correc-

tion officers. The defendant preserved this claim by making an offer of proof outside the jury's presence.

The defendant proffered the following evidence. Thomas Devoren, a state police detective, confirmed that on March 6, 1990, the defendant had spoken to him and filed a complaint against Mullhall pertaining to the incident on January 3, 1990. Maryann Grate, a nurse at the correctional center in New Haven, testified that she had witnessed the January 3 incident. She described it as a "playful encounter," not an altercation. She noted that Mullhall had initiated the encounter and that at one point he had grabbed the defendant around the neck. Following Grate's testimony, the defendant admitted a copy of the January 3, 1990 incident report prepared by Foley, which contained Mullhall's written statement. In that statement, Mullhall complained that the defendant had disobeyed a direct order and then "charged" him in a "hostile" manner. Peter Hall, an inmate at Somers prison, testified that on January 2, 1990, while he and the defendant were confined at the correctional center in New Haven, the defendant had witnessed Hall's being jumped, beaten and kicked by Mullhall and other correction officers following an argument between Hall and Mullhall over an electric fan. The defendant then testified that on January 3, Mullhall spotted him in the hallway without a pass and that an argument ensued. He claimed that Mullhall called him a "nigger" and then jumped on him and beat and kicked him.

The defendant argued that all of the above evidence was necessary to counter the state's evidence by establishing the collective bias and motive of correction personnel. He also claimed that the inconsistencies between Grate's account of the January 3 incident and the evidence contained in the institutional report of the same incident filed by Foley indicated the existence of an institutional "cover-up." On the basis of this sup-

position, the defendant claimed that this "substantive evidence" supported his defense that the correction officers had been the aggressors during the January 11 incident and that the present prosecution was the product of a similar cover-up. The court disagreed and sustained its ruling on the motion in limine.

The defendant now claims that the exclusion of his proffered evidence violated his constitutional right to present a defense and to confront the witnesses against him. The state argues that the trial court properly excluded the evidence as irrelevant and collateral. In the alternative, the state contends that even if the evidence was improperly excluded, this exclusion was merely harmless error.

It is well established in Connecticut that trial courts have wide discretion in ruling on the relevancy of evidence. *State* v. *Varricchio,* 176 Conn. 445, 450, 408 A.2d 239 (1979). Because judicial discretion is involved in such a ruling, our review focuses on whether the court reasonably exercised its discretion to exclude evidence that would introduce foreign or collateral issues into the case. *State* v. *Dortch,* 139 Conn. 317, 325, 93 A.2d 490 (1952). In our review of these discretionary evidentiary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. *State* v. *Weidenhof,* 205 Conn. 262, 278, 533 A.2d 545 (1987).

The theory of defense was that the correction officers, not the defendant, had been the aggressors in the January 11, 1990 incident and that a "correctional cover-up" had taken place. The purpose of the proffered evidence was to "demonstrate the core of bias against him, and the basis of the interest, and motive underlying testimony of the state's witnesses."

"Impeachment of a witness for bias is a matter of right." *State* v. *Shipman,* 195 Conn. 160, 163, 486 A.2d

1130 (1985). Evidence tending to indicate malice or ill will toward another is generally admissible in situations where states of mind are material. *State* v. *Crowley,* 22 Conn. App. 557, 559, 578 A.2d 157, cert. denied, 216 Conn. 816, 580 A.2d 62 (1990). The bias or prejudice of a witness may properly be shown either by cross-examination or by testimony of other witnesses. Id. Mullhall, however, was not a witness in this case.

The defendant sought to use this evidence not only to impeach the state's witnesses but to establish a cover-up with respect to the incident for which he was being prosecuted. As the state points out, however, even if the defendant could have established a conspiracy by Grate and Mullhall to cover up the incident of January 3, there was nothing but Mullhall's mere presence at the January 11 incident to connect the two events. The fact that Mullhall was present on January 11 along with numerous other correction officers was too tenuous a connection to provide a nexus with the earlier incident.

The trial court also recognized that the admission of this evidence would have opened the door to evidence of other incidents involving the defendant. Such evidence may have been very harmful to the defendant in the eyes of the jury.

We conclude that the trial court reasonably exercised its discretion to exclude, as irrelevant, this evidence of a collateral event that would have distracted the jurors' attention and impeded their concentration on the vital issues of this case. See *State* v. *Moynahan,* 164 Conn. 560, 589, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.