STATE OF CONNECTICUT *v.* THURLOW CAREY
(14361)

PETERS, C. J., GLASS, BORDEN, BERDON and F. X. HENNESSY, Js.

---

Argued March 26—decision released June 9, 1992

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, was *John M. Bailey,* state's attorney, for the appellant (state).

*Sarah Slade,* certified legal intern, with whom were *Todd D. Fernow, Timothy H. Everett* and, on the brief, *Brian J. Kornbrath,* for the appellee (defendant).

F. X. HENNESSY, J. The principal issue in this appeal is whether noncompliance with Practice Book § 943,[1]

[1] Practice Book § 943 provides in relevant part: "In cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant. All other proceedings for revocation of probation shall be initiated by an arrest warrant supported by an affidavit or by testimony under oath showing probable cause to believe that the defendant has violated any of the conditions of his probation or his conditional discharge or by a written notice to appear to answer to the charge of such violation, which notice, signed by a judge of the superior court, shall be personally served upon the defendant by a probation officer and contain a statement of the alleged violation. All proceedings thereafter shall be in accordance with the provisions of Secs. 634 and 660."

The General Statutes also authorize a procedure by which to commence probation revocation proceedings. General Statutes § 53a-32 (a) provides in relevant part: "At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. . . ."

We note that the Practice Book rule and the statute provide different procedures by which to commence probation revocation proceedings. See *State* v. *Carey,* 25 Conn. App. 421, 427–28, 594 A.2d 1011 (1991); *State* v. *Baxter,* 19 Conn. App. 304, 312 n.8, 563 A.2d 721 (1989). We also note that the usual practice seems to be for the state to proceed under the statute. See *State* v. *Durkin,* 219 Conn. 629, 631, 595 A.2d 826 (1991); *Payne* v. *Robinson,* 207 Conn. 565, 567, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988); *State* v. *Smith,* 207 Conn. 152, 156, 540 A.2d 679 (1988). Other cases have relied on the rule alone; *State* v. *Cook,* 183 Conn. 520, 441 A.2d 41 (1981); or on a combination of both. *State* v. *Grazdik,* 193 Conn. 35, 45–47, 475 A.2d 269 (1984); *State* v. *Egan,*

governing probation revocation proceedings, deprives the trial court of subject matter jurisdiction. The state appeals from the judgment of the Appellate Court reversing the judgment of the trial court and remanding the case to the trial court with direction to dismiss the proceedings. We reverse.

The record reveals the following facts. On July 21, 1988, the defendant, Thurlow Carey, pleaded guilty to and was found guilty of assault in the third degree in violation of General Statutes § 53a-61. The trial court, *Barry, J.,* imposed a ninety day suspended sentence and one year of probation. The order of probation included a special condition that the defendant have no contact with Kimberly Byrd, the victim of the assault for which he had been convicted.

During the probationary period, the defendant was arrested twice for allegedly assaulting Byrd. On February 28, 1989, the defendant's probation officer, Sharon Rome, filed a motion pursuant to Practice Book § 943 requesting the court to revoke probation on the ground that the "new conviction[2] constitutes a violation of his probation." On July 11, 1989, Rome, through probation officer Barbara D'Onofrio, filed a second motion for revocation of probation on the ground of "subsequent arrests."

On July 17, 1989, the trial court held a hearing on the July 11, 1989 motion for revocation of probation. The defendant did not question the propriety of a revocation proceeding commenced by motion pursuant to § 943. The court, *Norko, J.,* found that the defendant had violated the conditions of his probation. The court

9 Conn. App. 59, 72, 514 A.2d 394, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). The issue of any disparity between the rule and the statute is not before us on this appeal.

[2] The parties agree that the defendant had not, in fact, been convicted of the assault at the time of the revocation hearing.

revoked the defendant's probation and committed him to the custody of the commissioner of correction to serve the suspended portion of his original sentence.

The defendant appealed from the trial court's judgment to the Appellate Court, arguing that (1) the evidence at the hearing was insufficient to sustain the revocation decision; (2) he was denied his right to confront witnesses; and (3) the hearing violated his right to due process. At oral argument, the Appellate Court, noting that the probation revocation proceeding should not have been commenced by motion pursuant to § 943, questioned sua sponte whether noncompliance with that section deprived the trial court of subject matter jurisdiction. The Appellate Court granted a continuance to allow the parties to file supplemental briefs.

The Appellate Court reversed the judgment of the trial court. *State* v. *Carey*, 25 Conn. App. 421, 594 A.2d 1011 (1991). The court held that the way in which the probation revocation proceeding had been commenced did not comply with § 943 because a motion to revoke probation is authorized only when "the revocation is based upon a conviction for a new offense and . . . the defendant is before the court pursuant to that conviction." (Emphasis omitted.) Id., 424. Because the defendant had not been convicted of either of the two alleged assaults, the court held that the failure to comply with the Practice Book deprived the trial court of subject matter jurisdiction, and ordered the judgment reversed and the probation revocation proceeding dismissed. Id., 427–28.

We granted certification to appeal limited to two issues: "(1) Did the failure of the state to comply with Practice Book § 943 with respect to initiating this proceeding for revocation of the defendant's probation deprive the trial court of subject matter jurisdiction? (2) Did the defendant waive such noncompliance by fail-

ing to raise this procedural defect in the trial court?" *State* v. *Carey*, 220 Conn. 912, 597 A.2d 336 (1991).[3]

The state agrees that the revocation proceeding commenced against the defendant did not comply with § 943. The state argues, however, that this noncompliance did not divest the trial court of subject matter jurisdiction to decide whether to revoke the defendant's probation. The state contends that the failure to follow the Practice Book affected personal jurisdiction, and that the defendant had waived his right to contest the court's personal jurisdiction by failing to raise the issue at the probation revocation hearing.

The defendant argues that the Appellate Court correctly concluded that § 943 grants the trial court subject matter jurisdiction to adjudicate probation revocation proceedings, and that, therefore, the failure to follow the proper procedure divested the trial court of that jurisdiction. The defendant advances three arguments to support his position that § 943 implicates the court's subject matter jurisdiction: (1) probation revocation is penal in nature; (2) probation revocation is separate from the criminal prosecution, thus necessitating a new basis for subject matter jurisdiction; and (3) § 943 implements constitutional and statutory rights.

Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. 1 Restatement (Second), Judgments § 11. "A court does not truly lack subject mat-

---

[3] The defendant has also briefed in this court the substantive arguments that he originally presented to the Appellate Court and suggests that they are alternative grounds upon which that court's judgment could be affirmed. The Appellate Court, however, did not address the defendant's original arguments because it had concluded that it lacked subject matter jurisdiction. Accordingly, in light of our disposition of this appeal, those issues will be before the Appellate Court following our remand to that court.

ter jurisdiction if it has competence to entertain the action before it." *Monroe* v. *Monroe,* 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). " 'Jurisdiction involves the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created.' " *Andrew Ansaldi Co.* v. *Planning & Zoning Commission,* 207 Conn. 67, 73, 540 A.2d 59 (1988) (*Shea, J.,* concurring), quoting *Connecticut State Employees Association, Inc.* v. *Connecticut Personnel Policy Board,* 165 Conn. 448, 456, 334 A.2d 909 (1973). Article fifth, § 1 of the Connecticut constitution proclaims that "[t]he powers and jurisdiction of the courts shall be defined by law," and General Statutes § 51-164s provides that "[t]he superior court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute. . . ."

A court may raise the issue of its subject matter jurisdiction sua sponte and must dismiss the case if it finds subject matter jurisdiction to be lacking. *Park City Hospital* v. *Commission on Hospitals & Health Care,* 210 Conn. 697, 702, 556 A.2d 602 (1989). "[O]nce the question of lack of jurisdiction of a court is raised, '[it] must be disposed of no matter in what form it is presented' . . . and the court must 'fully resolve it before proceeding further with the case.' " (Citations omitted.) *Castro* v. *Viera,* 207 Conn. 420, 429, 541 A.2d 1216 (1988). The question of whether the court has such jurisdiction, however, must be " 'informed by the established principle that every presumption is to be indulged in favor of jurisdiction.' " *Lauer* v. *Zoning Commission,* 220 Conn. 455, 460, 600 A.2d 310 (1991).

The Superior Court hearing a criminal matter acquires subject matter jurisdiction from its authority as "a constitutional court of unlimited jurisdiction. Conn. Const.,

art. 5, § 1." *State* v. *Stallings,* 154 Conn. 272, 278, 224
A.2d 718 (1966). The Superior Court's authority in a
criminal case becomes established by the "proper
presentment of the information . . . which is essen-
tial to initiate a criminal proceeding." *Reed* v. *Reincke,*
155 Conn. 591, 598, 239 A.2d 909 (1967). In *State* v.
*Chin Lung,* 106 Conn. 701, 720, 139 A. 91 (1927), we
stated, "[u]pon the return to the Superior Court of the
indictment [or information] against the accused, it
obtained the sole and original jurisdiction of the charge
therein made . . . ." There is no doubt that the court
may order probation and take it away. General Stat-
utes §§ 53a-29 through 53a-34. Because "[r]evocation
is a continuing consequence of the original conviction
from which probation was granted"; *State* v. *Smith,*
207 Conn. 152, 178, 540 A.2d 679 (1988); and the inher-
ent authority to convict and sentence a defendant flows
from the authority to adjudicate a criminal cause of
action, the subject matter jurisdiction over a probation
revocation proceeding derives from the original
presentment of the information. See also *Liistro* v.
*Robinson,* 170 Conn. 116, 128, 365 A.2d 109 (1976) ("A
probationer is subject to judicial control and 'the court
may modify or enlarge' the conditions of probation.").

The Appellate Court concluded that § 943 affected
the trial court's subject matter jurisdiction. It started
from the premise that the rules of construction that
govern statutes are equally applicable to Practice Book
rules. *State* v. *Carey,* supra, 25 Conn. App. 426. The
court also reasoned that unless statutory procedures
are strictly followed, the matter is subject to dismissal.
Id., 426–27. The court concluded that the state's fail-
ure to comply strictly with § 943 deprived the trial court
of subject matter jurisdiction and remanded the case
for dismissal. Id., 428.

Although the proper procedure is the filing of a
motion for revocation of probation pursuant to the pro-

visions of the Practice Book, we do not agree that § 943 implicates the court's subject matter jurisdiction. When deciding whether to revoke probation, the Superior Court does not need to reestablish its authority over a criminal case that is already properly before it.

The defendant's arguments do not persuade us to hold otherwise. First, Practice Book rules do not ordinarily define subject matter jurisdiction. General Statutes § 51-14 (a) authorizes the judges of the Superior Court to promulgate rules "regulating pleading, practice and procedure in judicial proceedings . . . . Such rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts." The defendant has not presented us with any examples of criminal Practice Book rules that affect subject matter jurisdiction.

Nevertheless, the defendant argues that Practice Book rules that implicate important or constitutional rights are jurisdictional in nature and points to Practice Book § 388 et seq., the declaratory judgment action rules as examples. Section 390 sets forth a four-part test to determine whether the court may render a declaratory judgment. Most notably, subsection (d) requires that "all persons having an interest in the subject matter of the complaint" be parties or have reasonable notice of the action. Subsection (d) "has been regarded by this court as essential to the jurisdiction of a court to render a declaratory judgment." *Connecticut Ins. Guaranty Assn.* v. *Raymark Corporation*, 215 Conn. 224, 229, 575 A.2d 693 (1990). In that case, the court reversed a judgment on the merits on the ground that the trial court lacked subject matter jurisdiction to render a declaratory judgment because all interested persons had not been made parties to or notified of the action.

" 'This rule [§ 390 (d)] is not merely a procedural regulation. It is in recognition and implementation of the basic principle that due process of law requires that the rights of no man shall be judicially determined without affording him a day in court and an opportunity to be heard.' " *Kolenberg* v. *Board of Education,* 206 Conn. 113, 124, 536 A.2d 577, cert. denied, 487 U.S. 1236, 108 S. Ct. 2903, 101 L. Ed. 2d 935 (1988), quoting *Benz* v. *Walker,* 154 Conn. 74, 77, 221 A.2d 841 (1966). " 'It is the settled rule of this jurisdiction, if indeed it may not be called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard.' " *Connecticut Ins. Guaranty Assn.* v. *Raymark Corporation,* supra, 229, quoting *Ackerman* v. *Union & New Haven Trust Co.,* 91 Conn. 500, 508, 100 A. 22 (1917). Notably, no due process rights to notice and to appear are at issue in the present appeal.

The defendant is, furthermore, mistaken in his argument that § 390 itself confers subject matter jurisdiction to render a declaratory judgment. General Statutes § 52-29 (a), within the chapter entitled "Civil Jurisdiction," provides: "The superior court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment." Pursuant to this statute, "the General Assembly . . . authorize[d] our courts to render a declaratory judgment as a novel method of judicial procedure . . . enlarging our methods of remedial justice." (Internal quotation marks omitted.) *Braman* v. *Babcock,* 98 Conn. 549, 556, 120 A. 150 (1923). General Statutes § 52-29 (b) directs the judges of the Superior Court to make rules to effectu-

ate the purpose of the statute. Noncompliance with subsection (d) of Practice Book § 390 renders the declaratory judgment action void because the failure to comply with the notice requirement affects due process rights of persons not before the court and constitutes a substantial defect that deprives the court of subject matter jurisdiction. The fact that noncompliance with subsection (c)[4] of that Practice Book rule does not affect the court's subject matter jurisdiction; *England* v. *Coventry,* 183 Conn. 362, 365–66, 439 A.2d 372 (1981); lends support to the proposition that the Practice Book rule as a whole does not confer subject matter jurisdiction.

The defendant also argues that the court must obtain subject matter jurisdiction anew when the state commences a probation revocation proceeding because the proceeding is not part of the criminal prosecution. The United States Supreme Court has said that a probation revocation proceeding is not a stage of the criminal prosecution. *Gagnon* v. *Scarpelli,* 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). That statement, however, was made in the context of holding that "a probationer . . . is entitled to a preliminary and a final revocation hearing" before probation can be revoked because the potential loss of liberty affects an accused's procedural due process rights. Id. The court was not discussing subject matter jurisdiction, and we do not construe its statement to mean that a court loses subject matter jurisdiction over a criminal case when a defendant is sentenced to probation rather than to incarceration.

Additionally, the defendant argues that § 943 is penal in nature and that penal provisions must be strictly con-

---

[4] Practice Book § 390 (c) provides that the court will not render a declaratory judgment "where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure . . . ."

strued. The Appellate Court and the defendant rely on *State* v. *Cook,* 183 Conn. 520, 522, 441 A.2d 41 (1981), for the proposition that probation revocation proceedings under § 943 are penal in nature and that the rule, therefore, must be strictly construed. In *Cook,* the defendant was arrested pursuant to a warrant for violating his probation. Section 943 at that time required arrest warrants to commence probation revocation proceedings, and Practice Book § 594 required that such warrants be signed by "the judicial authority." The defendant filed a motion to dismiss the revocation proceeding because the arrest warrant had not been signed by a judge. This court, in a per curiam decision, affirmed the judgment granting the motion to dismiss based on the mandatory "shall" in § 594 and on the fact that a judge's signature serves to protect an individual's constitutional rights.

The decision in *State* v. *Cook,* supra, however, does not control this case because that decision did not specify whether the defective signature deprived the court of subject matter jurisdiction or personal jurisdiction, either of which could have provided the basis for the dismissal. Because the defendant in *Cook* moved to dismiss the proceedings himself, apparently in a timely manner, we decline to read the decision as controlling in this case.

Even if a statute or Practice Book rule must be strictly construed and is mandatory, compliance with its requirements does not necessarily become a prerequisite to a court's subject matter jurisdiction. See *State* v. *Siano,* 216 Conn. 273, 579 A.2d 79 (1990) (even though state failed to comply with mandatory Practice Book rule, error did not undermine confidence in fairness of the trial or defendant's right to confront witnesses and was, therefore, harmless); *LoSacco* v. *Young,* 210 Conn. 503, 508, 555 A.2d 986 (1989) (fail-

ure to comply with mandatory time requirement does not affect subject matter jurisdiction).[5]

Although the failure to comply with Practice Book § 943 did not divest the court of subject matter jurisdiction, the defendant could have raised the defective procedure at the probation revocation hearing. The defendant, however, waived his right to contest the defective procedure by failing to object. See *State* v. *Niblack*, 220 Conn. 270, 277, 596 A.2d 407 (1991); *State* v. *John*, 210 Conn. 652, 665 n.8, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). The Appellate Court improperly raised the defect on its own.[6]

The judgment is reversed, and the case is remanded to the Appellate Court for further proceedings according to law.

In this opinion the other justices concurred.

---

[5] This court has rarely held defects to affect the subject matter jurisdiction of a court in the criminal context. See, e.g., *State* v. *Fox*, 83 Conn. 286, 76 A. 302 (1910) (City Court of Norwich lacked subject matter jurisdiction to acquit the defendants of a crime that could carry a punishment greater than that allowed by the city charter and was within the type of case over which the General Statutes gave exclusive jurisdiction to the Superior Court); *Gilbert* v. *Steadman*, 1 Root 403 (1792) (Connecticut courts have no jurisdiction to adjudicate a theft allegedly committed in another state).

[6] The state asks us to apply the rule formulated in *State* v. *Fleming*, 198 Conn. 255, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986), in which we held that "an illegal arrest imposes no jurisdictional barrier to a defendant's subsequent prosecution . . . . Where the fairness of a subsequent prosecution has not been impaired by an illegal arrest, neither the federal nor the Connecticut constitution requires dismissal of the charges or a voiding of the resulting conviction." Id., 262–63. The "jurisdictional barrier" referred to in *Fleming* has been explained to pertain to personal jurisdiction over a defendant, not subject matter jurisdiction, and the right to contest it is deemed waived unless seasonably made. *State* v. *John*, 210 Conn. 652, 665 n.8, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). Therefore, because only subject matter jurisdiction is in issue in this case, an analysis under *Fleming* is not appropriate.