[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff alleges in his complaint that, on April 8, 1991, he sustained personal injuries when caused to fall on a defective stairwell on property owned by the defendant, First Constitution Bank ("First"), and located at 82 Pardee Street, in New Haven. Written notice of his claim was presented to the bank on June 11, 1991 and on June 13, 1991, a bank agent, Larsen Risk Consultants, acknowledged receipt of notice of the claim. On July CT Page 1967 25, 1991, the bank's agent, Aetna Insurance Company, again acknowledged receipt of the plaintiff's notice of claim.
First Constitution Bank was determined to be insolvent on October 2, 1991 and, pursuant to the provisions of12 U.S.C. § 1821(d)(3), the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver.
In 1993, after failing to resolve the claim by settlement, the plaintiff filed the present action and defendant FDIC moved to dismiss for lack of subject matter jurisdiction, claiming that the plaintiff failed to exhaust his statutory remedies by failing to present a claim to the receiver within ninety days from the date of publication of notice required by 12 U.S.C. § 1821(d)(3), (5) and (6); and that this court is an improper venue for the resolution of this action. That assertion by the FDIC is made notwithstanding the undisputed factual sequence of presentation of written notice, twice acknowledged by the defendant bank, prior to a declaration of insolvency and appointment of receiver. Moreover, the FDIC filed the motion to dismiss notwithstanding the fact that the complaint involves an insured risk and, absent a disclaimer of coverage by Aetna (a general appearance was entered on behalf of First), defendant FDIC is not at risk and, ostensibly, has no stake in this action, either on its own or on behalf of the bank's depositors and other creditors.
Upon its appointment as receiver on October 2, 1991, the FDIC became the successor in interest to the assets and liabilities of First and was authorized by statute to determine any claims against the bank. Pursuant to its statutory obligations, the FDIC noticed all creditors appearing on the books of First by publication of notice in The Hartford Courant, The ConnecticutPost, and The New Haven Register on October 7, 1992, November 6, 1992 and December 6, 1992.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot, as a matter of law and fact state a cause of action that should be heard by the court." Gurliacci v. Mayor, 218 Conn. 531, 544
(1991). "A motion to dismiss does not test the sufficiency of a cause of action and should not be granted other than on jurisdictional grounds." Caltabiano v. Phillips, 23 Conn. App. 258,265 (1990). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy CT Page 1968 presented by the action before it." Demar v. Open Space andConservation Commission, 211 Conn. 416, 423-24 (1989).
"Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong." Gurliacci v. Mayor, supra,218 Conn. 542. Where subject matter jurisdiction is at issue, every presumption favoring jurisdiction should be indulged. Miko v.Commission on Human Rights and Opportunities, 220 Conn. 192, 198
(1991). A claim of improper venue is properly raised by the motion to dismiss. Galke v. Galke, 7 Conn. L. Trib. n. 33, p. 9 (Super.Ct., March 4, 1981, Freedman, J.).
The motion to dismiss admits all facts well pleaded and the complaint is to be construed most favorably to the plaintiff.Duguay v. Hopkins, 191 Conn. 222, 227 (1983). "[T]he burden of proof [is] on the defendant as to jurisdictional issues raised. . . ."Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 53 (1983). The FDIC argues the lack of subject matter jurisdiction because the plaintiff Alvarado failed to exhaust the administrative remedies set forth in the Financial Institution Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(d)(3). It further claims that the Superior Court for the State of Connecticut is an improper venue for this action in that jurisdiction over a claim against the FDIC as receiver of a failed financial institution is limited to the United States District Court for the state or territory in which the failed institution had its principal place of business or for the District of Columbia.12 U.S.C. § 1821(D)(6)(A)(ii).
Those claims are insupportable in law and in fact.12 U.S.C. § 1821(d)(3), (5) and (6) establishes an administrative claims process for established "creditors" of the failed institution and does not purport to address pending tort claims, insured or uninsured, against the institution or the FDIC as its receiver. To assert that a litigant in a pending tort action is a "creditor" pursuant to the provisions of § 1821 is to distort not only the statutory language but well established concepts of common law torts and unresolved tort claims. In following the statutory scheme set forth in FIRREA, the FDIC is required as receiver to publish a notice to all creditors of the failed institution once monthly for a period of three months, establishing a deadline for the filing of claims not less than ninety (90) days from the date of the first publication. CT Page 1969
12 U.S.C. § 1821(d)(3)(C) requires that the FDIC "shall mail a notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the institution's books — (i) at the creditor's last address appearing in such books; or (ii) upon discovery of the name and address of claimant not appearing on the institution's books within 30 days of the discovery of such name and address."
Once a claim is filed with the FDIC as receiver, the agency has 180 days to determine whether to allow or disallow the claim.12 U.S.C. § 1821(d)(5)(B). Save for one narrow exception, claims filed after the deadline will be disallowed and such determination is final. 12 U.S.C. § 1821(d)(5)(C)(i). Again, the statute refers solely to "creditors" of the failed banking institution and nowhere does the statutory language suggest an attempt to expand that definition to embrace tort claims.
Assuming that the plaintiff Alvarado falls within the statutory class "of claimant[s] not appearing on the institution's books", he was entitled to have mailed to him "a notice similar to the notice published . . . at the time of . . . publication to any creditor shown on the institution's books."12 U.S.C. § 1821(d)(3)(C). The FDIC failed to comply with that notice requirement while admitting that the plaintiff's name did not appear as a creditor in the bank's books. The FDIC was on notice of the plaintiff's claim upon its appointment as receiver on October 2, 1991. Alvarado gave written notice of his claim to the bank on June 11, 1991. Moreover, the FDIC was on constructive notice of the plaintiff's claim through Larsen and Aetna, the bank's agents who, upon its appointment as receiver, became agents for the FDIC, at least for purposes of Alvarado's pending tort claim.
It is axiomatic that "notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal." E. Udolf, Inc. v. Aetna Casualty Surety Co., 214 Conn. 741, 746 (1990). The granting of the motion to dismiss because of a myopic reading of § 1821 would result in a denial of the plaintiff's due process rights. "Due process is the keystone of our system of justice." Shaw v. SouthburyPlanning Commission, 5 Conn. App. 520, 525 (1985). "A fair trial is the touchstone of due process . . . [and] the principle component of a fair trial is a fair hearing. . . ." Id. CT Page 1970
Part of the foundation of our system of justice is the "basic principle that due process of law requires that the rights of no man shall be judicially determined without affording him a day in court and an opportunity to be heard." Carey v. State ofConnecticut, 222 Conn. 299, 308 (1992). "It is the settled rule of this jurisdiction, if indeed it may not be called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been . . . given reasonable opportunity to appear and be heard." Id.
During oral argument on its motion to dismiss, the defendant FDIC admitted that the plaintiff's tort claim would not appear on the bank's records of creditors, but denied any knowledge of any other bank records that would give notice of the claim to the receiver. The court finds it difficult to believe that this case is one of first impression for the FDIC. "Congress specifically placed the burden on the receiver to give notice to claimants of the administrative claims process, a process which, if not complied with, would ultimately act as a complete bar to any action by the claimant." Lukas v. Culver, No. 3:92:CV:40 (D. Conn., September 21, 1993). "It would hardly be a fair result to oust a claimant from the court before its claim can be determined on the merits when it was the receiver who failed to give proper statutory notice." Id., 6.
Since "12 U.S.C. § 1821(d)(3)(B) — (C) triggers the administrative claims process by notifying claimants that they must file a claim and the time period within which they must do so . . . [where] a claimant has not received the proper notice, it stands to reason that the claims process is not triggered. Absent proper notice, the claimant should still be allowed to present its claim to the receiver as the time for presenting claims only begins to run after the receiver has properly complied with the notice requirements. As a result, the claimant's rights are not prejudiced, the claimant may be heard on the merits of their case and experience only a slight delay while they are required to comply with the administrative process." Id. 6-7.
The FDIC failed to comply with the notice requirements of § 1821(d)(3)(C) but seeks, nevertheless, to deprive Alvarado of his due process rights to a fair trial. On that ground alone the motion to dismiss must fail.
The second ground asserted in support of the motion to CT Page 1971 dismiss is that this court is not the proper venue for the present action. The FDIC claims that 12 U.S.C. § 1821
(d)(6)(A)(ii) mandates that this action be brought in the U.S. District Court of the State of Connecticut or in the District of Columbia. The truth of the matter is, however, that the code provides, in pertinent part, that a "claimant may . . . file suit on . . . [a] claim . . . in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia [and such court shall have jurisdiction to hear such claim]."
Enactment of 12 U.S.C. § 1821 was consistent with rather than in derogation of the constitution and Congress therefore saw no reason to prescribe a conflict of laws situation for purposes of venue. "Concurrent jurisdiction always exists under the Supremacy Clause until affirmatively and expressly revoked by federal law. See Howlett v. Rose, 496 U.S. 356, 370 n. 17 (1990) (citingMinneapolis St. Louis R. Co. v. Bombolis, 241 U.S. 211, 222
(1918)." Holmes Financial Associates, Inc. v. Resolution TrustCorporation, No. 93-5911, U.S. Court of Appeals, sixth Circuit (August 19, 1994).
In Tafflin v. Levitt, 493 U.S. 455, 458 (1990), the Supreme Court held that "under our system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." The court noted that "state courts have inherent authority, and are presumptively competent, to adjudicate claims arising under the law of the United States." Id. In a concurring opinion, Justice Scalia reviewed the Court's concurrent jurisdiction jurisprudence and stated:
 State courts have jurisdiction over federal causes of action not because it is "conferred" upon them by Congress; not even because their inherent powers permit them to entertain transitory causes of action arising under the laws of foreign sovereigns, but because "[t]he laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. . . . The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other. . . .
 It therefore takes an affirmative act of power under the Supremacy Clause to oust the States of jurisdiction — CT Page 1972 an exercise of what one of our earliest cases referred to as "the power of Congress to withdraw" federal claims from state-court jurisdiction.
Id. at 469-70 (quoting, in the first instance, Claflin v. Houseman,93 U.S. 130, 136-137 (1820), and in the second, Houston v. Moore, 5 Wheat. 1, 26 (1820).
Recognition — and apparent adoption — of Justice Scalia's views occurred in the case of Yellow Freight System, Inc. v.Donnelly, 494 U.S. 820, 823 (1990), where it was held that, in order to overcome the "presumptive competence" of state courts to hear and determine cases arising under federal law, Congress must "affirmatively divest" the state courts of that jurisdiction and must do so in the context of the statute.
The FDIC, in filing its motion to dismiss, seeks to deny Alvarado his rights of due process and to create a conflict where none exists. Its arguments at the hearing on the motion, asserting the supremacy of FIRREA over the constitutional rights of an individual, are illogical and repugnant to our system of government and must be rejected. The claim of improper venue is unfounded and must be viewed as an attack on the jurisdiction of the court to hear this matter for purposes of considering the motion to dismiss.
The motion to dismiss is denied.