******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

BISHOP, J., dissenting. In reversing the judgment of the trial court opening its judgment of dismissal, my colleagues in the majority conclude: "[T]he court improperly granted the state's motion to open because, in the absence of any codified authorization, either express or clearly implied, a criminal court cannot take further action in a criminal matter once there has been a complete and final resolution of all pending charges, which would include the judgment of dismissal rendered in the present case." In coming to this view, the majority acknowledges that it is deciding a case of first impression. Indeed, there is neither statutory nor common-law precedent to support the majority's conclusion. Because I believe the court had both the power and the authority to open the judgment of dismissal, I respectfully dissent.

At the outset, I acknowledge that the majority has accurately set forth the procedural and factual underpinnings to this appeal as well as our standard of review. My disagreement lies in the majority's legal reasoning and the conclusion it draws from its analysis.

I begin my analysis by noting our jurisprudence regarding the jurisdiction of the Superior Court. "The Superior Court of this state as a court of law is a court of general jurisdiction. It has jurisdiction of all matters expressly committed to it and of all others cognizable by any law court of which the exclusive jurisdiction is not given to some other court." *State ex rel. Morris* v. *Bulkeley*, 61 Conn. 287, 374, 23 A. 186 (1892); see also *State* v. *Das*, 291 Conn. 356, 361, 968 A.2d 367 (2009) ("[t]he Superior Court is a constitutional court of general jurisdiction" (internal quotation marks omitted)); *State* v. *Luzietti*, 230 Conn. 427, 431, 646 A.2d 85 (1994) (same). "Article fifth, § 1 of the Connecticut constitution proclaims that '[t]he powers and jurisdiction of the courts shall be defined by law,' and General Statutes § 51-164s provides that: '[t]he [S]uperior [C]ourt shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute.' " *State* v. *Carey*, 222 Conn. 299, 305, 610 A.2d 1147 (1992). Additionally, because the Superior Court is a constitutional court of general jurisdiction, "[i]n the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law." (Internal quotation marks omitted.) *State* v. *Das*, supra, 361; see also *State* v. *McCoy*, 331 Conn. 561, 577, 206 A.3d 725 (2019) (explaining that, in absence of legislative or constitutional provisions governing when trial court loses jurisdiction, issue is governed by common law).

The Superior Court's general jurisdiction includes

jurisdiction over criminal cases. "The Superior Court has subject matter jurisdiction to hear criminal matters from its authority as a constitutional court of *unlimited* jurisdiction. . . . The Superior Court's authority in a criminal case becomes established by the proper presentment of the information . . . which is essential to initiate a criminal proceeding." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Pompei*, 52 Conn. App. 303, 307, 726 A.2d 644 (1999).

Further, at common law, "a trial court possesse[d] the inherent power to modify its own judgments during the term at which they were rendered. . . . During the continuance of a term of court the judge holding it ha[d], in a sense, absolute control over judgments rendered; that is, he can declare and subsequently modify or annul them. . . . Under the [common-law] rule, a distinction [was] drawn between matters of substance and clerical errors; the distinction being that mere clerical errors [could] be corrected at any time even after the end of the term. . . . But [i]n the absence of waiver or consent of the parties, a court [was] without jurisdiction to modify or correct a judgment in other than clerical respects after the expiration of the term of the court in which it was rendered." (Citations omitted; internal quotation marks omitted.) *State* v. *Wilson*, 199 Conn. 417, 436–37, 513 A.2d 620 (1986).

In a venerable opinion, our Supreme Court opined that "[t]he jurisdiction continues to exist in full force, to be exercised whenever a proper occasion shall require it. A *suspension* of the jurisdiction of a court . . . is a solecism. Jurisdiction is either exhausted or retained. It can never be properly said to be in a state where it is *suspended* and can be *revived*. The exercise of it by the court possessing it may be and often is suspended, but it still continues to exist, and only awaits the determination of the court as to when and how it shall be called into action." (Emphasis in original.) *Sanford* v. *Sanford*, 28 Conn. 5, 14 (1859). Additionally, the teaching of our decisional law is that "[t]he question of whether the court has . . . jurisdiction . . . must be informed by the established principle that every presumption is to be indulged in favor of jurisdiction." (Internal quotation marks omitted.) *State* v. *Mack*, 55 Conn. App. 232, 235, 738 A.2d 733 (1999).

Finally, as to general principles pertinent to our inquiry, our decisional law is clear that when determining whether a statute has abrogated or altered the common law, the construction of the statute "must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." (Internal quotation marks omitted.) *Caciopoli* v. *Lebowitz*, 309 Conn. 62, 70, 68 A.3d 1150 (2013). The teaching of our Supreme Court in *Caciopoli* could not be clearer: "Interpreting a statute to preempt

a common-law cause of action is appropriate only if the language of the legislature plainly and unambiguously indicates such an intent. [W]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a [common-law] rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. . . . Although the legislature may eliminate a common-law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed. . . . We recognize only those alterations of the common law that are clearly expressed in the language of the statute because the traditional principles of justice upon which the common law is founded should be perpetuated. The rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of continuity and stability in the legal system as the doctrine of stare decisis in relation to case law." (Citations omitted; internal quotation marks omitted.) Id., 70–71.

With these principles in mind, I turn next to the circumstances at hand. There can be no question that the Superior Court acquired jurisdiction over the defendant, Carlton Butler, and the case once the criminal charges against him were brought to court. The question for our decision is whether the court lost jurisdiction once it rendered the judgment of dismissal after finding that the defendant had successfully completed a two year, supervised diversionary program pursuant to General Statutes § 54-56*l*.

My analysis of this issue requires an examination of the common law pertaining to the court's retention of jurisdiction and then of whether the common law in this regard has been superseded or abrogated by statute. As our Supreme Court has noted, on the criminal side, "[n]either our General Statutes nor our Practice Book rules define the period during which a trial court may modify or correct its judgment in a *criminal* case." (Emphasis in original.) *State* v. *Wilson*, supra, 199 Conn. 437. Accordingly, I turn to our judicial decisions to determine what limitations on the court's jurisdiction have been promulgated by decisional law.

In my review of our judicial decisions, I have found only two limitations that affect the common-law rule regarding the retention of jurisdiction by a criminal court. First, a criminal court loses jurisdiction over a matter once a sentence has been imposed and a defendant is committed to the Commissioner of Correction. *State* v. *McCoy*, supra, 331 Conn. 581–82 ("the court loses jurisdiction over [a] case when the defendant is

committed to the custody of the [C]ommissioner of [C]orrection and begins serving the sentence" (internal quotation marks omitted)). "It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the [C]ommissioner of [C]orrection and begins serving the sentence." (Internal quotation marks omitted.) *State* v. *Das*, supra, 291 Conn. 361–62. Although there is a bright-line, common-law rule regarding a criminal court's power to modify or vacate a criminal judgment when a sentence has been imposed, there is no such rule where, as here, a criminal judgment has been dismissed.

Second, where no sentence has been imposed, a criminal court's jurisdiction to modify its judgment ends after a period of four months following judgment. See *State* v. *Wilson*, supra, 199 Conn. 437. In a much debated opinion, our Supreme Court in *Wilson* held that "[n]either our General Statutes nor our [rules of practice] define the period during which a trial court may modify or correct its judgment in a *criminal* case. On the *civil* side, however, [our rules of practice provide] that any civil judgment or decree may be opened or set aside within four months succeeding the date on which it was rendered or passed. We see no reason to distinguish between civil and criminal judgments in this respect, and we therefore hold that, for purposes of the [common-law] rule, a criminal judgment may not be modified in matters of substance beyond a period of four months after the judgment has become final." (Emphasis in original; internal quotation marks omitted.) Id. Although the specific holding of *Wilson* that the court had continuing jurisdiction of a matter even after a defendant had been sentenced so long as the court's subsequent action took place within four months of sentencing was later abrogated by our Supreme Court in *McCoy* on the basis that once a defendant has been sentenced the court loses jurisdiction over a criminal matter, the portion of *Wilson* that supports a court's continuing jurisdiction during the court's session before sentencing and committal to the Commissioner of Correction remains unchallenged. See *State* v. *McCoy*, supra, 331 Conn. 586–87 ("we take this opportunity to clarify and reiterate, as we have consistently done . . . that a trial court loses jurisdiction once the defendant's sentence is executed, unless there is a constitutional or legislative grant of authority").

In its analysis, the majority opines that the common-law rule regarding the court's continuing jurisdiction is no longer part of our common law because it "has been superseded or rendered inoperable by statutory changes and, thus, does not factor into our consideration of the jurisdiction of the criminal court as it currently exists under our common law." It is apparent

from the majority's opinion that, in coming to this conclusion, my colleagues are referring to General Statutes § 51-181[1] and, respectfully, I believe the majority reaches well beyond the confines of that statute in making the sweeping assertion that statutory law has now replaced the common law regarding the retention of jurisdiction of a criminal court. In further support of its view, the majority cites to *Luzietti* for the proposition that the criminal court's common-law jurisdiction to vacate a judgment during the " 'term' " in which it had been rendered "no longer has vitality in this state." *State* v. *Luzietti*, supra, 230 Conn. 432 n.6. Respectfully, however, I believe that the majority's citation to *Luzietti* is inaccurate. Indeed, the court in *Luzietti* explained, in the cited passage, that, "[a]t common law, the trial court's jurisdiction to modify or vacate a criminal judgment was also limited to the 'term' in which it had been rendered. . . . Since our trial courts no longer sit in 'terms,' that particular [common-law] *limitation* no longer has vitality in this state." (Citation omitted; emphasis added.) Id. This properly cited passage reveals that the court in *Luzietti* was discussing the elimination of the limitation of a trial court's jurisdiction over its judgments to the term of the court. Accordingly, *Luzietti* does not stand for the proposition advanced by the majority but, rather, for a contrary interpretation of the development of common law and one consistent with the court's exercise of jurisdiction in this matter. Accordingly, in my view, no decisional law has altered the common-law rule regarding the court's continuing jurisdiction.

The majority takes a different approach to this issue regarding the durability of common law. In reaching its conclusion that the trial court lost jurisdiction over this matter, the majority states that "[n]o statutory provisions exist . . . that expand the existing common-law jurisdiction of our criminal courts or expressly permit a court to reinstate criminal charges after it has dismissed them." In expressing this view, I believe, respectfully, that the majority has failed to acknowledge the continued viability of common law unless is has been expressly abrogated or superseded by statutory or decisional law. The majority's view ignores the basic jurisprudence that common law persists unless it has been supplanted or abrogated by statute or judicial decision. In my view, because the court is a constitutional court of general jurisdiction, and there are no statutory or constitutional provisions delineating the jurisdiction of a criminal court after a judgment of dismissal, we must look to the common law to determine if any limitations on the court's jurisdiction exist. If there are no common-law limitations on the court's jurisdiction to open a judgment after dismissal in a criminal case, then arguably "this case does not . . . require us to *expand* the court's jurisdiction, as the majority suggests. Rather, the question is whether the court inalterably *lost* juris-

diction it unquestionably had . . . ." (Emphasis in original.) *State* v. *McCoy,* supra, 331 Conn. 607 (*D'Auria, J.,* concurring).

The question, therefore, is not whether any statute or decision permits the court to exercise continuing jurisdiction but, rather, whether any act of the legislature or judiciary has altered the common law regarding the jurisdiction of a criminal court. As stated, I have found no such enactment.

The majority does appear to recognize that the court could exercise jurisdiction if its judgment had been procured by fraud but dismisses this possibility on the basis that the court did not find that its judgment had been fraudulently procured. Indeed, our Supreme Court has stated that "[c]ourts have intrinsic powers, independent of statutory provisions authorizing the opening of judgments, to vacate any judgment obtained by fraud, duress or mutual mistake."[2] *In re Baby Girl B.,* 224 Conn. 263, 283, 618 A.2d 1 (1992); see also *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 131, 429 A.2d 837 (1980) ("[t]he power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence judgments obtained by fraud may be attacked at any time").

I agree that the court made no explicit finding of fraud; however, the record does support a determination that in granting the motion the court made a unilateral mistake induced by the misrepresentations of defense counsel. The court's comments during the hearing before the judgment was opened reflect the court's belief that it was grossly misled by the representations defense counsel had made to the court at the time the dismissal was rendered.[3] Although it is clear that the court did not point the finger at defense counsel for the statements he made to the court in support of his motion to dismiss, it is equally apparent that the court determined that the gist of defense counsel's comments were based on material misrepresentations. That the court was wrongly induced into an erroneous decision is plain from the court's comments.

Finally, I note the majority makes a public policy argument in favor of its view that the judgment in this matter should not have been opened. At the outset, I do not believe that the underlying question of jurisdiction implicates public policy.[4] The question is not whether the court should have granted the state's motion to open the judgment but, rather, whether the court had the power or authority to act as it did. As such, this case presents a legal issue of the proper understanding of the common law on this topic and whether the common law has been altered by legislative enactment or judicial decision making.

Furthermore, to the extent public policy has any role

in this discussion, although I recognize the liberty interests of the defendant implicated in this matter, so, too, I appreciate the role of the court in punishing the guilty and protecting victims of crime and the general public from criminal behavior. Given the allegation of criminal behavior that was the basis of the initial charges—finding the defendant with his shorts down to his ankles and his genitals exposed while standing behind a twelve year old juvenile male who also had his pants down—the state has a heightened interest in the protection of the child-victim as well as the prevention of the recurrence of such abhorrent behavior for the protection of all minors and society in general.

For the foregoing reasons, I respectfully dissent.[5]

[1] As stated previously, at common law, a court had the power to modify a judgment during the term in which the judgment was rendered. *Morici* v. *Jarvie*, 137 Conn. 97, 104, 75 A.2d 47 (1950); *Wilkie* v. *Hall*, 15 Conn. 32, 37 (1842). "The word 'term' as used in the common-law rule that a judgment may not be opened after the term at which it was rendered has been interpreted to mean 'sessions' of court as defined in § 51-181 . . . ." (Footnote omitted.) *Snow* v. *Calise*, 174 Conn. 567, 571, 392 A.2d 440 (1978). General Statutes (Rev. to 1977) § 51-181 provides in relevant part: "The superior court shall be deemed continuously in session with four sessions, except as otherwise provided in sections 51-180, 51-182 and 51-185, held on the first Tuesday of September, January and April and the first Tuesday following July fourth annually, in each of the several counties and judicial districts of the state, at such times and places and for such duration of time as is fixed and determined by the chief judge of the superior court annually, with the approval of the chief court administrator, except as otherwise provided by law . . . ." The present version of General Statutes § 51-181 makes no reference to "sessions" of court and provides that "[t]he Superior Court shall sit continuously throughout the year, at such times and places and for such periods as are set by the Chief Court Administrator . . . ."

[2] "The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Billington* v. *Billington*, 220 Conn. 212, 217, 595 A.2d 1377 (1991).

[3] For sure, the court did not fault defense counsel for the misrepresentations that had been made when the motion to dismiss had been argued, but the court, nonetheless, found that the dismissal had been rendered on the basis of misrepresentations. The court stated that "the court based its decision to dismiss [the case] on information that was incorrect, was totally contradictory to his [diversionary program] and I would assert—well, I'm the judge, so I can—that I did it under false pretenses. I dismissed this under false pretenses that the defendant was in compliance when, boy, not only was he not in compliance, he couldn't have been any further away from compliance. . . . As you can see, I'm a little angered because it really stings—it hurts that such a misrepresentation—and, counsel, I'm not faulting you, you went with the information you had with you at the time—but it was not even close to being accurate or truthful."

[4] In response to my assertion that public policy should play no role in a correct assessment of whether the trial court retained jurisdiction in this matter, the majority now cites to *Demond* v. *Project Service, LLC*, 331 Conn. 816, 848, 208 A.3d 626 (2019) for the contrary proposition. I disagree. As I read *Demond*, the court there was discussing the public policy that a common-law rule embraced and not whether policy considerations could be utilized to understand the common law. As such, I believe, respectfully, that *Demond* is inapplicable to the issue at hand.

[5] It may be argued that the implications of acknowledging the court's jurisdiction to act as it did after the dismissal of a criminal matter following the purported successful completion of a pretrial diversionary program are that no dismissals should be treated as final and that a judge may open a judgment at any time and for any reason the court may deem appropriate. I do not take such a dim view of the wisdom and discretion of the trial bench. In the case at hand, the prosecutor moved to open the judgment

just one day after the matter had been dismissed and the court's action was based on material misrepresentations made to it during the hearing on the motion for a dismissal.

_____